FILED
2022 Mar-07  PM 03:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| AMY HENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:20-cv-00071-LSC |
| | ) | |
| WALKER COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF OPINION

Plaintiff Amy Henson ("Henson") brings this action against Defendants former Walker County Sheriff Jim Underwood ("Underwood") and current Walker County Sheriff Nick Smith ("Smith"). In Counts One and Three of her Second Amended Complaint, Henson asserts violations of the 4th Amendment under 42 U.S.C. § 1983 ("§ 1983") against Defendant Underwood. In Count Two, Henson asserts a failure to supervise claim under § 1983 against Defendant Underwood without identifying a specific constitutional provision.[1] Henson seeks leave of this Court to add Count Four to assert an unlawful discrimination claim under § 1557 of

---

[1] This Court assumes, based on the facts and elements alleged, that Henson is bringing a claim under the Fourteenth Amendment.

the Affordable Care Act, 42 U.S.C. § 18116 ("§ 1557"). In Count Five, Henson attempts to seek injunctive relief against Smith. Presently before the Court are Plaintiff's Second Motion to Amend/Correct Complaint (Doc. 50), Defendants' Motion to Dismiss Second Amended Complaint (Doc. 56), and Defendants' Motion to Strike Second Amended Complaint (Doc. 58). The motions are fully briefed and ripe for review. For the reasons stated below, Plaintiff's Motion to Amend is due to be DENIED, Defendants' Motion to Dismiss is due to be GRANTED IN PART and DENIED IN PART, and Defendants' Motion to Strike is due to be TERMINATED AS MOOT.

## I.    Procedural History

In the first two iterations of her complaint, Henson claimed to have been a victim of kidnapping and a consumer of "multiple illicit drugs." (Doc. 2 at ¶¶ 16–17.) Henson claimed she was then taken to the Walker County Jail and deprived of medical treatment. Based upon those allegations, Henson brought § 1983 claims against Walker County, former Walker County Jail Administrator Trent McCluskey, Walker County Sheriff Nick Smith, former Walker County Sheriff Jim Underwood, and Deputy Sheriff Joshua Dill. Four of those defendants (Walker County, McCluskey, Smith, and Dill) filed motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6). (Docs. 10, 9, 14, and 12.) Underwood and McCluskey moved to dismiss for improper service. (Docs. 28 and 8.)

After extensive briefing the Court entered a twenty-four-page Memorandum of Opinion on December 7, 2020. The Memorandum and its accompanying Order dismissed Henson's claim against Walker County for failure to state a plausible claim for relief; dismissed her claim against Sheriff Smith for a lack of standing; and dismissed her claims against Joshua Dill—both in his official and individual capacities. Furthermore, the Court (1) directed Henson to serve McCluskey within fourteen days and (2) mooted Underwood's motion to dismiss. (Docs. 39 and 40.) On December 21, 2020, Henson sought to amend her Complaint for a second time. (Doc. 41). On May 7, 2021, this Court granted that motion in part and denied the motion in part. (Doc. 47). On May 25, 2021, Henson filed her Second Amended Complaint. (Doc. 49).

## II.    Henson's Allegations

At this stage, the Court accepts a plaintiff's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). Without ruling on their veracity, Henson's allegations are the same as the allegations described in this Court's Memorandum of

Opinion dated December 7, 2020. (*See* Doc. 39). The only substantial difference is that Henson now claims mental illness—not kidnapping and abuse of illicit drugs—caused her arrest and confinement. Henson asserts that "[o]n January 14, 2018, prior to her arrest, Plaintiff was having a severe crisis of mental health. While Plaintiff has used drugs other than prescription drugs, she had not done so for many days prior to that day." (Doc. 49 at 4). Henson further claims that she knew she was suffering from severe emotional trauma and knew that she needed medical treatment. (*Id.* at 4–5).

### III.    Standards of Review

#### A. Leave to Amend

A district court's discretion to deny leave to amend a complaint is severely restricted" by Federal Rule of Civil Procedure 15. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2019). Rule 15(a)(2) instructs district courts to freely allow amendments "when justice so requires," and justice normally requires that plaintiffs be "given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). The lone exception is futility; a district court "need not allow any amendment where amendment would be futile." *See Lee v. Alachua Cnty., Fla.*, 461 F. App'x 859, 860

(11th Cir. 2012). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310–11 (11th Cir. 2007) (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004)).

### B. Rule 12(b)(6) Motions for Failure to State a Claim

To withstand a 12(b)(6) motion a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court next "assume[s] the veracity" of all well-pleaded factual allegations and determines whether those allegations "plausibly give rise to an entitlement to relief." *Id.* Only the complaint itself and any attachments thereto may be considered, even when the parties attempt to present additional evidence. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014); *see also* Fed. R. Civ. P. 12(d).

### C. Rule 12(b)(1) Motion for Lack of Standing

"Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)." *Region 8*

*Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8 (11th Cir. 1993). A 12(b)(1) motion takes one of two forms: a facial attack or a factual attack. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Sheriff Smith's 12(b)(1) motion is a facial attack on Henson's standing. To evaluate Sheriff Smith's facial attack, the Court "examines whether [Henson's] complaint has sufficiently alleged subject matter jurisdiction." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). This looks much like the 12(b)(6) analysis. "[T]he Court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled factual allegations as true." *Id.*

### D. Rule 12(b)(5) Motion for Insufficient Process

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, service must be made either "pursuant to the law of the state in which the district court is located, or in which service is effected," or "by delivering a copy of the summons and complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering

a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1) and (2).

## IV.   Discussion

### A. Leave to Amend

Henson seeks leave of this Court to add Count Four asserting an unlawful discrimination claim under § 1557 of the Affordable Care Act. This request is due to be denied based on futility. *Cockrell*, 510 F.3d at 1310–11. Section 1557 only applies to specific health programs or activities that are receiving Federal financial assistance. If an entity is not principally engaged in the business of providing healthcare, it is only covered if its health programs or activities themselves receive Federal financial assistance. *See* 45 C.F.R. § 92.3. Plaintiff has not alleged that the Walker County Sheriff's Office operates a health program that receives Federal financial assistance. Instead, she claims that Sheriff Underwood is covered by the statute merely "by virtue of his statutory obligations under Alabama law, and by virtue of the fact that he did provide health care." (Doc. 49 at 20). Therefore, even if this Court were to grant Henson leave to amend, Count Four would be due to be dismissed for failure to state a claim.[2] Accordingly, Plaintiff's Second Motion to

---

[2] This Court questions whether a private cause of action even exists under § 1557. However, this Court need not make that determination because even if a cause of action exists, Henson has not properly plead the required elements.

Amend/Correct Complaint (Doc. 50) is due to be DENIED. As a result, Defendant's Defendants' Motion to Strike Second Amended Complaint (Doc. 58), which seeks to strike Count Four, is due to be TERMINATED AS MOOT.

### B. Service of Process

Defendant Underwood claims that Henson's service of process was insufficient. (Doc. 57 at 9). Because service of process is a jurisdictional requirement, this Court must address this argument before turning to Underwood's remaining arguments. *Pardazi*, 896 F.2d at 1317. Here, Henson submitted an affidavit of Lance McDade ("McDade"), the process server, describing the service of process. McDade stated that he went to the home of James Underwood on May 11, 2020. (Doc 37–1). When McDade arrived, he saw two people in the yard and recognized one of them as James Underwood. (*Id.*). McDade told Underwood that he had a summons and complaint for a Larry Underwood. (*Id.*). James Underwood then said that no one by that name lived there. (*Id.*). However, McDade told Underwood that the complaint and summons were for him, despite the name mix up. (*Id.*). McDade told Underwood that because of the COVID-19 pandemic, he was going to leave the complaint and summons on the bumper of his truck. (*Id.*). McDade did so, took pictures of the scene, and left the property. (*Id.*). Considering the circumstances surrounding the COVID-19 pandemic and the actual service itself, this Court

determines that Underwood was served personally. McDade delivered a copy of the

summons and complaint to Underwood and satisfied the requirements of Rule 4(e).

### C. Henson's Capacity to Sue

Defendant Underwood argues that Henson lacks mental capacity to bring this

suit and this case should be dismissed until a personal representative is appointed for

her by the Walker County Probate Court. (Doc. 57 at 23). A plaintiff's capacity to

sue in federal district court is governed by state law. Fed. R. Civ. P. 17(b)(1). Alabama

law defines an "incapacitated person" within its chapter on guardianship as:

> Any person who is impaired by reason of mental illness, mental
> deficiency, physical illness or disability, physical or mental infirmities
> accompanying advanced age, chronic use of drugs, chronic intoxication,
> or other cause (except minority) to the extent of lacking sufficient
> understanding or capacity to make or communicate responsible
> decisions.

Ala. Code § 26-2A-20(8). The critical question is thus whether a person "lack[s]

sufficient understanding or capacity to make or communicate responsible

decisions." *Id.* Although Alabama state courts have not directly held that this

definition applies to determining a person's capacity to litigate, some federal courts

have employed it for that purpose. *See United States v. One Parcel of Prop. Located at

9607 Lee Rd. 72, Waverly, Lee Cty., Ala.,* 915 F. Supp. 2d 1270, 1271 (M.D. Ala.

2012)*; Brown v. Williamson*, 134 F. Supp. 2d 1286, 1291 (M.D. Ala. 2001).

Ultimately, the relevant inquiry is whether 'there is sufficient evidence in the record

to determine that [Henson] is mentally impaired to the extent that [s]he cannot understand the nature and effect of this litigation." 915 F. Supp. 2d at 1271.

Here, Henson's complaint alleges she was experiencing an episode of mental illness while at the Walker County Jail. However, no evidence has been presented that demonstrates that Henson is currently experiencing or was experiencing an episode of mental illness at the time this lawsuit was filed. Accordingly, this Court determines that, as of now, there is nothing that would show Henson lacks capacity to bring this lawsuit.

### D. Relation Back

Defendant Underwood argues that the Second Amended Complaint is due to be dismissed because Henson's claims are time barred. Henson asserts that the Second Amended Complaint relates back to the original complaint. State law dictates the applicable statute of limitations when a claim is brought pursuant to § 1983. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Because Alabama law provides the statute of limitations, this Court looks to Alabama civil procedure rules to determine whether relation back is allowed. *Estate of West v. Smith*, 9 F.4th 1361, 1366 n.3 (11th Cir. 2021). Alabama Rule of Civil Procedure 15(c) states:

> (c) Relation back of amendments. An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, except as may be otherwise provided in Rule 13(c) for counterclaims maturing or acquired after pleading, or

(3) the amendment, other than one naming a party under the party's true name after having been initially sued under a fictitious name, changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the applicable period of limitations or one hundred twenty (120) days of the commencement of the action, whichever comes later, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party, or

(4) relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h).

Thus, in order for relation back to apply, Henson's Second Amended Complaint must (1) arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading and (2) be served within the applicable period of limitations or one hundred twenty days from the commencement of the action. Ala. R. Civ. P. 15(c)(2 & 3). Here, both are satisfied.

First, Henson's Second Amended Complaint arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Henson still alleges that she was strapped to a restraint chair and denied

basic medical and mental health treatment. This alleged failure on the part of Walker County Jail employees provides the basis of Henson's claim against Underwood. As a result, this Court finds that the Second Amended Complaint arises out of the same conduct set forth in the original pleading.

Second, Underwood was served within one hundred twenty days of the commencement of this action. This action was initiated on January 14, 2020. (*See* Doc. 1). Underwood was served on May 11, 2020. (Doc. 37–1).[3] Thus, Underwood was served 118 days after the commencement of this action. Accordingly, Underwood received notice of the action within the proscribed time to allow relation back. As a result, Henson's claims are not time barred as the relation back doctrine applies.

### E. Qualified Immunity

In Count One, Two and Three of Henson's Amended Complaint (Doc. 15.), she brings claims pursuant to 42 U.S.C. § 1983. In Count One, Henson asserts that Underwood violated her rights under the Fourth Amendment to the United States

---

[3] Generally, "[o]nly the complaint itself and any attachments thereto may be considered, even when the parties attempt to present additional evidence." *See Adinolfe*, 768 F.3d at 1168. However, this Court converted the Defendants Rule 12(b)(6) motion into a motion for summary judgment under Rule 56 on February 8, 2022. (Doc. 65). Accordingly, this Court considers the evidence presented regarding this issue.

Constitution.[4] In Count Two, Henson asserts that Underwood failed to adequately train Walker County Jail staff to provide adequate healthcare for mental illness. In Count Three, Henson asserts a failure to provide adequate medical treatment by Underwood.[5] Underwood asserts qualified immunity as a complete defense.

"The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

---

[4] "A pretrial detainee's claim of deliberate indifference to a serious medical need falls under the **Fourteenth Amendment's** Due Process Clause." *Watkins v. Pinnock*, 802 F. App'x 450, 454 (11th Cir. 2020) (emphasis added). Henson mistakenly brought her claims under the Fourth Amendment. Upon review, the Court found other cases where litigants mislabeled a serious-medical-need claim. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (pretrial detainee mistakenly brought claim under the Eighth Amendment); *Andujar*, 486 F.3d at 1203 n.3 (same). In those, the Eleventh Circuit overlooked the error and analyzed the claim under the proper amendment. This Court does the same here.

[5] There are no facts which suggest that Underwood personally participated in the alleged constitutional violations. Accordingly, this Court treats Count Three as a claim for supervisory liability.

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). The qualified immunity analysis does not take into account an officer's alleged subjective intent; instead, it "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* Thus, to overcome a public official's entitlement to qualified immunity, a plaintiff must be able to establish not only that the public official acted wrongfully, but also be able to point the court to law existing at the time of the alleged violation that provided "fair warning" that the conduct of the defendants was illegal. *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003).

To be eligible for qualified immunity, the officers must demonstrate that they were acting in the scope of their discretionary authority. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). "[T]he determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v.*

*Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1999). The incident giving rise to Plaintiff's claims arise from Sheriff Underwood's statutory duty to operate a jail. *See* Ala. Code § 14-6-1. Because Underwood was carrying out his statutory duty of operating the jail, he was acting within the scope of his discretionary authority.

Since Underwood was acting within his discretionary authority, the following two-part test determines whether qualified immunity applies: first, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In *Pearson v. Callahan*, the Court abandoned the rigid order of analysis enunciated in *Saucier* and left it to the district courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009).

### a. Deliberate Indifference

An official violates a pretrial detainee's constitutional rights if he or she is deliberately indifferent to the detainee's serious medical need(s). *Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007). A deliberate indifference claimant must satisfy three "components." *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th

Cir. 2007). "First, she must satisfy the objective component by showing that she had a serious medical need. Second, she must satisfy the subjective component by showing that the . . . official acted with deliberate indifference to her serious medical need. Third, as with any tort claim, she must show that the injury [or deprivation] was caused by the defendant's wrongful conduct." *Id.* (citations omitted).

The parties do not dispute, for the purpose of this decision, that Henson had a serious medical need while in custody at Walker County Jail. Thus, the first prong is satisfied. Henson alleges that Underwood's deliberate indifference caused her injuries. Thus, the third prong is satisfied. To satisfy the second prong and show deliberate indifference, a plaintiff must allege enough facts to raise three elements above the speculative level: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Goebert*, 510 F.3d at 1317 (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)). With respect to Defendant Underwood, Henson's claims are not based upon his personal participation but are based upon his position as Sheriff of Walker County. Ultimately, Henson's claims can be boiled down to two theories: failure to supervise and failure to train.

### i. Failure to Supervise

"[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional depravation." *Cottone*, 1360 (11th Cir. 2003). A plaintiff establishes a causal relationship between a supervisory official's acts and the acts of his subordinates in one of three ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, or (3) the facts support "the inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno*, 325 F. 3d 1228, 1234–35 (11th Cir. 2003); *see also Harper v. Lawrence County*, 592 F. 3d 1227, 1236 (11th Cir. 2010).

Here, no allegations were made of a widespread history of abuse in Henson's Second Amended Complaint. Further, no facts support the inference that Underwood directed the subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so. Henson does state several conclusions about Underwood's knowledge. She says, "Underwood knew or should have known that an inmate such as Plaintiff, who was vomiting and

suffering diarrhea for days, would become dangerously dehydrated without medical intervention." The Court ignores these conclusions. *See Harper v. Lawrence Cnty. Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (the Eleventh Circuit ignored the legal conclusion that jail officials "had full knowledge that [the plaintiff] was an alcoholic who would experience delirium tremens due to alcohol withdrawal if left untreated"). Only well-pled factual allegations deserve the presumption of truth. *Iqbal*, 556 U.S. at 678.

Regardless, Henson has sufficiently alleged that Underwood implemented a custom or policy that resulted in deliberate indifference to her constitutional rights. Specifically, Henson alleges that:

> Without limitation of the foregoing, the policy of the Sheriff when Plaintiff was booked is that a mentally ill detainee should not be treated at the Jail or allowed to be treated elsewhere, because the Sheriff gets money for housing prisoners but is forced to pay money for medical care, which care is especially expensive for persons with acute psychiatric illness because such treatment necessarily comes from specialists. This continues to be the policy of the Sheriff today. As a result of that policy, Plaintiff suffered severe bodily injuries then and she is still suffering injury today.

(Doc. 49 at 11–12). Thus, Henson has alleged a custom or policy that resulted in a deliberate indifference to her constitutional rights. Accordingly, Henson has sufficiently alleged deliberate indifference on a supervisory liability theory.

## ii. Failure to Train

A sheriff's decision not to train employees to not violate citizens' rights may rise to the level of an official government policy for § 1983 purposes. *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015). However, liability for a failure to train will only arise when the need for such training is "plainly obvious" to policymakers. *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990). A claim regarding an isolated incident is generally insufficient to sustain a failure to train cause of action because the officials in charge of training policies must be on notice of constitutional deficiencies. *McMurry v. Moore*, 242 F. Supp. 2d. 1167 (N.D. Fla. 2002). If a sheriff has no actual notice of unconstitutional practices by the offending subordinate or if there is no "history of widespread abuse by [d]epartment personnel that would have put the sheriff on notice of the need for improved training or supervision" the sheriff will not be held liable for a failure to train or supervise. *See Id.* "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 72 (2011) (Scalia, J. concurring). Here, no allegations were made of a widespread history of abuse in Henson's Second Amended Complaint. Ultimately, no allegations were made that Underwood was on notice of the need for improved

training or supervision. Accordingly, Henson has failed to sufficiently establish deliberate indifference to survive a motion to dismiss on a failure to train theory.

### b.  Constitutional violation

Next, the Court turns to the second step of qualified immunity—that is, whether the rights that Henson's alleges were clearly established. A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To show that the conduct was unconstitutional with obvious clarity, "the unlawfulness must have been apparent." *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1318 (11th Cir. 2003). Henson must demonstrate violations of clearly established law in either of two ways. First, Plaintiff can point to a case with materially similar facts holding that the conduct engaged in was illegal. *Storck*, 354 F.3d at 1317. Second, in absence of case law, Plaintiff must demonstrate that a pertinent federal statute or constitutional provision is specific enough to demonstrate the Defendants' conduct was illegal. *Id.*

The Eleventh Circuit has held that "pretrial detainees ... plainly have a Fourteenth Amendment due process right to receive medical treatment for illness and injuries, which encompass a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide.'" *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir. 2003)). Further, "[t]he knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." *Patel v. Lanier Cnty. Ga*, 969 F.3d 1173, 1190 (11th Cir. 2020) (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)).

Thus, at the time of Henson's arrest, it was clearly established that an officer's deliberate indifference to the need for medical care is a violation of the Fourteenth Amendment. Here, Henson has alleged that she was suffering from a mental health and medical crisis during her time at Walker County Jail. Henson has also alleged that she was not provided with medical care. Because it was clear that failure to provide care in the face of a known serious need is unconstitutional, Underwood is not entitled to qualified immunity. This Court does not address whether the constitutional violation was clear for failure to train as this Court finds no deliberate indifference as to Underwood in Count Two.

Accordingly, Defendant's Motion to Dismiss is due to be DENIED as to Count One to the extent it asserts a failure to supervise claim and is due to be GRANTED as to Count One to the extent it asserts a failure to train claim. The motion is also due to be GRANTED as to Count Two and due to be DENIED as to Count Three based on qualified immunity.

### F. Injunctive Relief

Nick Smith became Walker County's sheriff after Henson's arrest and time at jail. Jim Underwood, not Nick Smith, was sheriff "[a]t all times relevant to this lawsuit." (Doc. 2 at ¶ 4.) She therefore sued Smith only in his official capacity and only for injunctive relief. Smith contends that Henson lacks standing to seek her requested injunctive relief. This Court previously dismissed all claims against Smith on December 7, 2020. (Docs. 39 & 40). Henson then sought leave to amend her complaint. (Doc. 41). Henson attached her proposed Second Amended Complaint to that motion. (Doc. 41–1). This Court said that "two allegations within the proposed complaint *might* … change the standing analysis." (Doc. 47 at 4). However, after a careful review of the allegations in the Second Amended Complaint, this Court concludes that Henson lacks standing to seek injunctive relief against Smith.

Article III of the United States Constitution limits federal courts' jurisdiction to cases and controversies, U.S. Const. art. III § 2, and "standing is an essential . . . part of the case or controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A standing analysis asks "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Sims v. Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir. 1989). To have standing, the party asserting federal jurisdiction must establish three elements.

> First, [he or she] must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560–61 (internal citations and quotation marks omitted).

"Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasis in original). Stated differently, the plaintiff must show "a sufficient likelihood that [she] will be affected by the allegedly wrongful conduct [again] in the future."

*Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1265 (11th Cir. 2001)).

Former jail inmates generally don't have standing to enjoin future jail actions or future jail conditions. *See Dudley v. Stewart*, 724 F.2d 1493 (11th Cir. 1984); *McKinnon v. Talladega*, 745 F.2d 1360, 1362 (11th Cir. 1984); *Holland v. Purdy*, 457 F.2d 802, 803 (5th Cir. 1972) ("Since Holland was no longer subjected to the complained-of conditions at the time this litigation was instituted, nor is he at the present time, the petition should have been dismissed on the ground of mootness."). The narrow holding of *Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984) does not, in this case, override the general rule—that former jail inmates cannot sue a jail or jail officials for prospective injunctive relief. In *Lynch*, a mentally ill plaintiff challenged Alabama's practice of holding an individual in county jail pending his or her civil commitment hearing. *Id.* at 1455–57. Although the plaintiff was not incarcerated when he brought the suit, he was incarcerated twice in the three years before. *Id.* Based on (1) that pattern of incarceration, (2) the plaintiff's "mental problems" which were "subject to reoccurrence," and (3) the high likelihood that "state officials [would] continue to employ the county jails to detain . . . mentally ill individuals awaiting final commitment hearings," the plaintiff "was realistically threatened by a repetition of his experiences and therefore [had] standing." *Id.*

According to the Court, the plaintiff was "at risk of [again] being detained in jail not because of volitional acts on his part but because his mental condition would prompt his family, as it [had] done on two previous occasions, to petition for involuntary commitment." *Id.* at 1457. The Court ultimately found that the plaintiff's claims were "capable of repetition, yet evading review." *Id.*

Henson claims to have been confined at Walker County Jail on a second occasion—sometime in the summer of 2020. (Doc. 49 at ¶ 57.) A pattern of confinement, in some scenarios, might suggest future confinement is more likely and less speculative. *Lynch*, 744 F.2d at 1456–57. Henson also claims that mental illness (and not a kidnapping) caused her January 2018 arrest and confinement. If true—if Henson has suffered and continues to suffer major psychotic breakdowns—then the threat of future confinement at Walker County Jail, in some scenarios, may be sufficient to justify standing. *Id.* (holding that a mentally ill former county-jail inmate had standing to sue for injunctive relief because there was "every indication that [he] would continue to be the subject of involuntary commitment petitions" and re-confined in the same jail).

However, *Lynch* is distinguishable from the case at hand. The plaintiffs in *Lynch* sought to enjoin the defendant officials of the state of Alabama from detaining in county jails persons awaiting mental illness involuntary commitment proceedings.

*Id.* at 1454. Here, Henson has certainly alleged that she has been reincarcerated and has a mental illness that makes reincarceration likely in the future. While the issue in *Lynch* was whether it was likely that the plaintiffs would be reincarcerated, that is not the issue here. Instead, the issue is whether Henson will be again placed in a restraint chair and denied medical care, including mental health treatment. No allegations supporting such a conclusion have been made. In fact, when Henson was reincarcerated in 2020, she apparently was not placed in a restraint chair or denied medical treatment. Thus, Henson's threats of future harm are more speculative and less actual or imminent than the plaintiff's injury in *Lynch*. Her claim against Smith is therefore due to be dismissed due to her lack of standing.

## V.    Conclusion

For the reasons discussed above, Plaintiff's Motion to Amend (Doc. 50) is due to be DENIED, Defendants' Motion to Dismiss (Doc. 56) is due to be GRANTED IN PART and DENIED IN PART, and Defendants' Motion to Strike (Doc. 58) is due to be TERMINATED AS MOOT. An Order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on March 7, 2022.

_____
L. Scott Coogler
United States District Judge

206770