# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| Amy Henson, | ) |
| Plaintiff, | ) |
| v. | ) 7:20-cv-00071-LSC |
| Walker County et al., | ) |
| Defendants. | ) |

## Memorandum of Opinion

Amy Henson ("Henson") brings this action against Jim Underwood ("Sheriff Underwood"), the former sheriff of Walker County. Henson alleges that Sheriff Underwood had a custom of denying proper treatment to mentally ill inmates at the Walker County jail and thereby violated her constitutional rights. For the following reasons, Sheriff Underwood's motion for summary judgment and his motion to strike are due to be granted.

**I.      Factual Background**[1]

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011)

On January 14, 2018, a Walker County deputy arrested Henson on charges of public intoxication and possession of drug paraphernalia. (Doc. 86-2 at 2.) According to Henson, she was "in the middle of a mental health crisis that was rapidly worsening" and experienced hallucinations. (*See* doc. 93-1 at 4; doc. 86-16 at 7.) She had taken drugs—prescribed medication, meth, marijuana, and *gamma*-hydroxybutyric acid—a few days before her arrest. (Doc. 86-16 at 7.) According to jail documents, she could not answer booking questions because she was under the influence, but Henson disputes this characterization. (*See* doc. 86-3 at 2; doc. 86-16 at 23.) According to Henson, jail personnel mistook her "for someone under the influence of illegal drugs, rather than someone who was profoundly mentally ill" and failed to provide "adequate mental health treatment." (Doc. 93-1 at 5 & 7.)

From the early morning hours of January 15 until the following day, Henson alleges that jail officials confined her to a restraint chair. (Doc. 85 at 6.) During this period of time, Henson claims that she was "forced to sit in her own vomit, urine, feces, and blood." (Doc. 93-1 at 5.) On January 16, guards took Henson out of the restraint chair and returned her to an observation cell in the booking area. (Doc. 85 at 7.) On January 19, she was released from the Walker County jail.

---

("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

## II. Procedural History

As detailed in two previous Memoranda of Opinion, Henson originally brought § 1983 claims against multiple defendants under multiple theories. (*See* doc 39; doc. 69.) Former Sheriff Underwood is the only remaining defendant, and Henson's remaining claims against Sheriff Underwood are § 1983 "failure to supervise" claims. This Court previously found that Henson adequately "alleged a custom or policy that resulted in a deliberate indifference to her constitutional rights." (Doc. 69 at 18.)[2]

On October 21, 2022, Sheriff Underwood filed a motion for summary judgment. On November 17, aware that Henson did not file a Response within twenty-one days of the defendant's motion as required by the Uniform Initial Order, "the Court ordered the Plaintiff to show cause as to why the Defendant's Motion should not be granted." (*See* doc. 92 at 2.) Henson responded on November 28.

With her response, Henson included 134 pages of what she describes as inmate intake forms. (*See* doc. 90-1.) She claims to have received these forms from a third-party[3] on November 25—well after the discovery deadline of October 15 and after

---

[2] This Court found that "no allegations were made of a widespread history of abuse in Henson's Second Amended Complaint. Further, no facts support the inference that Underwood directed the subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so." (Doc. 69 at 17.)

[3] Henson claims that she received the purported intake forms from Lisa Jordan—the former spouse of an employee of a company that provides healthcare to the inmates of the Walker County jail.

the original response brief deadline. (*See* doc. 90 at 3.) Henson claims that she served a subpoena on Sheriff Nick Smith[4] to obtain such intake forms but never received a response. (*Id.*) Former Sheriff Underwood claims that he was never made aware of this subpoena and did not receive notice of any subpoena directed to Sheriff Smith. (*See* doc. 95 at 2.) Further, Henson did not seek the assistance of this Court in obtaining a response to any subpoena directed to Sheriff Smith. (*See* doc. 92 at 3.)

### III. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge

---

(*See* doc. 90 at 3.) In an unsuccessful effort to authenticate the purported intake forms, Henson submits an affidavit from Lisa Jordan. (*See* doc. 90-2.) However, this affidavit does not cure the deficiencies of the purported intake forms. As discussed elsewhere, Henson did not obtain these documents through the discovery process, and Sheriff Underwood never had the opportunity to scrutinize them.

[4] Nick Smith is the current sheriff of Walker County and Underwood's successor.

should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV. Analysis

As Sheriff Underwood asserts in his Motion to Strike, it would be improper to consider the purported inmate intake forms. The parties were given sufficient time to conduct discovery, and the Court granted a thirty-day discovery extension—until October 15—at Henson's request. (*See* doc. 83 – Text Order.) By Henson's own account, she did not receive the purported intake forms until November 25—over a month past the discovery deadline and nearly two weeks after the original response brief deadline.

Even if Henson did issue a subpoena for these documents and did not receive a response as she says, Sheriff Underwood claims that he did not have the opportunity to object to this subpoena because he was not "even made aware that such a subpoena had been issued." (Doc. 95 at 2.) In any event, if Henson was having difficulty obtaining discovery, she should have sought the Court's assistance when the discovery period was open. As these documents were not obtained through the discovery process, the Court cannot evaluate their authenticity. If the Court were to consider these documents, Sheriff Underwood would first need additional time to review them and to conduct discovery related to their origin, authenticity, and

content. With the foregoing considerations in mind, this Court declines to reopen discovery and declines to consider the purported intake forms.

However, even if the Court did consider the purported intake forms, Henson's response brief does not support her contention that Sheriff Underwood "had a custom of depriving mentally ill inmates of their right to mental health medication (or any other mental health care)." (*See* doc. 90 at 8.) For one matter, Henson does not cite to specific intake forms to support her arguments. Instead, she merely cites Exhibit 1, which consists of all 134 pages. (*See, e.g.*, doc. 90 at 2.) As already noted, "district court judges are not required to ferret out delectable facts" in the record. *See Chavez*, 647 F.3d at 1061. Accordingly, it is not this Court's role to sift through the purported intake forms to find support for Henson's claims.

Furthermore, the Court has independently reviewed many of the purported intake forms, and they do not provide evidence that a "custom or policy . . . resulted in deliberate indifference to [Henson's] constitutional rights." *See Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). The documents appear to be basic screening forms and provide meager detail. As Sheriff Underwood argues, they do not "reveal what treatments the inmates actually received or any diagnosis regarding their mental health." (*See* doc. 95 at 4.) As a result, the purported intake forms do not

establish that Sheriff Underwood had a custom of denying proper treatment to mentally ill inmates.

## V. Conclusion

For the foregoing reasons, Sheriff Underwood's Motion to Strike and his Motion for Summary Judgment are due to be granted.

**DONE** and **ORDERED** on December 14, 2022.

_____
L. Scott Coogler
United States District Judge

211211